UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MICHAEL ANTONELLI, | &#124; | |
| | &#124; | |
| Petitioner, | &#124; | Civil Action No. 06-283-GFVT |
| | &#124; | |
| v. | &#124; | |
| | &#124; | |
| HECTOR RIOS, WARDEN, | &#124; | **MEMORANDUM OPINION** |
| | &#124; | **AND ORDER** |
| Respondent. | &#124; | |

**** **** ****

Petitioner Michael Antonelli, then an inmate incarcerated at the United States Penitentiary - Big Sandy in Inez, Kentucky, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on December 26, 2006. [R. 2.] In his petition, Antonelli alleged, amongst other things, that the Bureau of Prisons ("BOP") convicted him of a disciplinary infraction for "Encouraging a Group Demonstration" in retaliation for his assistance to other inmates in filing prison grievances and in violation of his Due Process rights.

Upon screening, the Court determined that Antonelli's claims should be denied and dismissed the petition. [R. 7.] On appeal, the Sixth Circuit affirmed the dismissal of three of Antonelli's claims, but concluded that Antonelli had sufficiently alleged the loss of Good Conduct Time ("GCT") as a sanction for his "Group Demonstration" offense, and remanded for further proceedings on that claim. [R. 16.] Following service of process, the Warden filed a response to the petition [R. 24] and Antonelli has filed a reply in further support. [R. 34.] Antonelli has also filed a number of motions seeking various relief, including discovery and an expansion of the record. [R. 26, 27, 31, 32, 33.] These matters are before the Court for decision.

**I.**

On February 27, 2006, while incarcerated at the Federal Correctional Complex in Forrest City, Arkansas ("FCC-Forrest City"), Antonelli submitted an Attempt at Informal Resolution in which he complained that BOP counselors Leukefeld and Hoover were "perpitrating [sic] a fraud" because neither was licensed by the State of Arkansas to practice as psychologists, and asked that they be fired. Antonelli included with his grievance a February 23, 2006, letter from the Arkansas Psychology Board (the "Licensure Letter"), which indicated that Leukefeld was neither a Licensed Psychologist nor Provisional Licensee under Arkansas law, while Hoover was approved to work only as a Provisional Licensee. [R. 5-2 at pg. 2]

On March 2, Officer Baltazar, a member of the Special Investigative Agent's Office ("SIA"), filed an Incident Report charging Antonelli with "Encouraging a Group Demonstration," a Code 212 violation. The Incident Report alleged that Baltazar had spoken to several inmates who stated that Antonelli had been circulating the Licensure Letter to inmates, and that both Leukefeld and Hoover informed him that several inmates had contacted them regarding the contents of the Licensure Letter. Four members of the Psychology Services staff also indicated that inmates had shown them copies of the Licensure Letter. Following review of the Incident Report by the Unit Disciplinary Committee ("UDC") on March 4, the UDC referred the charge to a Disciplinary Hearing Officer ("DHO") for further consideration. On that day, Antonelli was given a document which advised him of his rights during the hearing, including the right to call witnesses and present documentary evidence in his defense. Shortly thereafter, Antonelli requested representation by a staff member. [R. 24-2; Walasinski Decl. at ¶ 25; Exh. G.]

On March 13, the DHO commenced a hearing on the charges.  At the hearing, Antonelli asked to present written statements regarding the claim.  The DHO suspended the hearing to be reconvened at a later date in order to permit Antonelli to do so.  Antonelli also asked the DHO to recuse herself on the ground that she was not impartial because she was subject to the "command influence" of BOP officer Marquez, a captain at FCC-Forrest City.  The DHO advised Antonelli that she was not employed by the institution but by the South Central Regional Office of the BOP and, accordingly, was not subject to any influence by a BOP officer working for the institution.  The DHO further advised Antonelli that the witnesses he wished to call to attest to his character would not be called, as the hearing was not designed to assess his character but to determine whether he committed the prohibited act, and the proffered testimony would therefore be irrelevant.

On March 29, the DHO re-convened the hearing at 8:30 a.m.  Antonelli testified that he had given the Licensure Letter to Estrada and Lopez, and that Estrada had stated that Antonelli gave the letter to Shaver and Forbes, but Antonelli denied any such broader "circulation" of the letter.  The DHO Report indicates that Antonelli requested that three persons be called to testify at the hearing, inmates Estrada, Huff, and Hughes.  Each was called and gave testimony at the hearing.  Estrada and Huff testified that they had received a copy of the letter and were using it as an exhibit in a court case, Hughes testified that he had never seen the letter.  The DHO discredited this testimony in light of Antonelli's assertion that their testimony was colored by a fear of retaliation by staff members.

The DHO Report indicates that she reviewed memoranda provided by BOP staff members Baltazar, Leukefeld, Hoover, Forbes and Shaver regarding the events in question.  The memoranda collectively indicate that at least four inmates told the BOP staff members that "they were given the letters by [Antonelli] in an effort to have them submit Administrative Remedies and/or lawsuits

against the staff." [R. 24-2; Walasinski Decl. at ¶ 25; Exh. H; R. 34-12 at pg. 20 ("Importantly,

Crumby further indicated that Antonelli's stated reason in circulating the letter was for the express

purpose of recruiting other inmates in his effort to discredit, undermine, and harass myself and Dr.

Leukefeld in the performance of our duties.")] Antonelli asked to review the written statements.

While the DHO denied this request, she did permit Antonelli's staff representative to review the

statements. The DHO also reviewed two written statements by Antonelli dated March 13, 2006 and

March 29, 2006.

The DHO concluded from the evidence provided that numerous inmates had received copies

of the Licensure Letter. The DHO found the testimony given by Antonelli's inmate witnesses to be

less credible than that provided by prison staff and concluded, therefore, that given Antonelli's

admitted animosity towards Leukefeld and Hoover as evidenced by his March 13 and March 29

written submissions, he had provided copies of the Licensure Letter for the purpose of discrediting

counselors Leukefeld and Hoover, and therefore was guilty of the violation. The DHO sanctioned

Antonelli with 30 days in disciplinary segregation, forfeiture of 27 days of GCT, loss of phone

privileges for 180 days, and loss of commissary privileges for 180 days suspended pending clear

conduct. Antonelli challenged the disciplinary conviction through the BOP's inmate grievance

process, through and including an unsuccessful appeal to the Central Office of Inmate Appeals.

While incarcerated at U.S.P. - Big Sandy, Antonelli filed his petition in this action,

challenging his disciplinary conviction on numerous grounds, including that:

1.     Code 212's prohibition against "encouraging a group demonstration" was
       unconstitutionally vague because it did not give him fair notice that his
       conduct would be in violation of the section.

2.      The disciplinary charge was filed against him solely to retaliate against him for filing grievances and assisting other inmates in doing so.

3.      DHO Jones was not an impartial decision maker because she was a subordinate to another BOP officer who bore animosity towards Antonelli.

4.      The DHO hearing, as conducted, violated his due process rights to call and question witnesses in his defense and know the information relied upon to substantiate the conviction.

[R. 5 at pgs. 3-6.]  The Court will discuss each contention in turn.

## II.

### A.

At the outset, the Court addresses Antonelli's procedural motions.  Antonelli has filed a "Motion for Extension of Time ..." to file his reply in further support of his petition. [R. 26.]  The Court grants this motion.

Antonelli has filed a motion asking the Court to hold the Warden in contempt of Court for his asserted failure to abide by this Court's Order for the Warden to file into the record all documents which are relevant to the issues remaining for decision in this case.  [R. 27.]  When ordering a response to a habeas petition, the Court routinely requires the respondent to file relevant documentary evidence into the record to enable the Court to decide the issues presented upon an adequate evidentiary record.  [R. 17.]  The Court's Order does not purport to require the respondent to file each and every document which Antonelli believes could conceivably bear upon the litigation, it merely requires a good faith effort to produce the relevant documentary record.  The Court finds that the Warden has made such a good faith effort, and Antonelli's motion for an order of contempt is denied.

Antonelli also filed a motion for an evidentiary hearing [R. 31], but his argument in support is merely a reiteration of his argument that the DHO hearing he challenges was constitutionally flawed. Because the voluminous documentary record provided by the parties is more than sufficient to decide the issues presented, Antonelli's motion is denied.

Antonelli filed a motion seeking the Court's permission to compel the BOP to produce copies of numerous internal investigative reports generated by the BOP in relation to himself, as well as to conduct depositions and written discovery request of several inmates and BOP staff officers who were involved in the investigation that resulted in his being charged and convicted of the offense in question. [R. 32.] Rule 6(a) of the Rules Governing § 2254 Cases does permit a court to allow a petitioner to engage in discovery upon a showing of good cause. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

However, largely conjectural allegations cannot be used by a petitioner to engage in a fishing expedition. *Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000). Here, Antonelli makes no allegation as to what information the requested discovery would yield that is relevant to the allegations presented in his petition. Antonelli's primary claim relates to the DHO's conduct of the evidentiary hearing on the disciplinary charge, and the nexus between the requested discovery and that claim is not self-evident. While some of the officers or inmates might provide information which weighs against a finding of guilt, the Warden correctly point out that Antonelli's conviction need only be supported by "some evidence," not a higher evidentiary standard. Further, the Court is mindful of the Supreme Court's admonition that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*,

472 U.S. 445, 455 (1985). Permitting the kind of open-ended discovery sought by Antonelli would invite this Court to engage in the kind of exhaustive, plenary review of the evidence adduced at the DHO hearing which the Supreme Court in *Hill* expressly cautioned against. Antonelli's motion for discovery is therefore denied.

Antonelli has filed a motion to expand the record, and includes with his motion 55 pages of documents which appear to relate to the offense conduct at issue in this proceedings, including his efforts to appeal the disciplinary conviction. [R. 33.] The Court grants the motion, and the tendered documents shall be considered part of the record.

B.

1.

Program Statement 5270.07 sets forth a number of Prohibited Acts which may subject an inmate to discipline. Code 212, which prohibits an inmate from "engaging in, or encouraging a group demonstration," is a High Category offense. Antonelli contends, in essence, that his section is unconstitutionally vague as applied to him because it did not give him "fair notice" that this conduct could violate the section.

As the Ninth Circuit aptly stated, "[i]t is clearly established, both by common sense and precedent, that due process requires fair notice of what conduct is prohibited before a sanction can be imposed." *Murphy v. Shaw*, 195 F.3d 1121, 1128 (9th Cir. 1999); *see also United States v. Kozminski*, 487 U.S. 931, 949-50 (1988). However, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Thus, "a regulation need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth; and regulations are not automatically invalidated as vague

7

simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Piscottano v. Murphy*, 511 F.3d 247, 280 (2nd Cir. 2007) (internal quotation marks and citations omitted) (*citing United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963)).

In *August v. Payne*, 2002 WL 1973866 (5th Cir. 2002), the Fifth Circuit addressed a comparable challenge to a Code 212 conviction on vagueness grounds. There, a federal prisoner circulated a petition which was signed by 64 inmates which alleged that African-American prisoners were being placed at risk by the BOP's policy of commingling them with Hispanic inmates, and requested, in non-combative, constructive terms, that the BOP address the situation. Shortly after the BOP commenced an investigation into the allegations made in the petition, the prisoner was charged with and convicted of a Code 212 violation for encouraging a group demonstration. Because the Fifth Circuit found the prisoner's petition to be benign in its terms and there was no indication that prison operations were disrupted, the Fifth Circuit found that Code 212 would not give a prisoner fair notice that merely circulating a constructive, non-inflammatory petition would violate the rule, and accordingly ordered that the disciplinary conviction be vacated. *Id*. at **2.

At first blush, Antonelli's circulation of a letter which he did not author might suggest an even stronger case for vagueness than presented by the *August* case. However, notwithstanding Antonelli's characterization of his conduct as being merely a conduit for information to other prisoners, the DHO possessed memoranda from five BOP staff members that indicated Antonelli was not merely providing the letter to other inmates, but was actively urging them to use the letter to file administrative remedies or civil actions against counselors Leukefeld and Hoover. Antonelli could certainly reasonably foresee that such conduct could be characterized as "encouragement."

The use Antonelli urged for the letter, as documentary support to be used in conjunction with the filing of multiple lawsuits and grievances, does not invoke the image of a "group demonstration," as that phrase might commonly be understood to describe a political march or protest. But like a "demonstration," Antonelli's goal was to pursue a coordinated effort by multiple inmates to discredit Leukefeld and Hoover. Although Antonelli's activities were plainly not the kind of quintessential "demonstration" expressly proscribed by Code 212, they were, much like a demonstration, clearly a coordinated group activity designed to express a shared view regarding the counselors' qualifications. Because the BOP's listing of Prohibited Activities need not identify each and every activity which will result in sanctions with "meticulous specificity," *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963), the Court finds that Code 212 is not unconstitutionally vague, even as applied to conduct which, like Antonelli's, may fall at the periphery of that proscribed.

**2.**

Antonelli next contends that the disciplinary charges against him were filed by staff at FCC-Forrest City in retaliation for his previous actions, including filing grievances and lawsuits against staff members, and for assisting other inmates in doing so. In particular, Antonelli points to the antagonistic relationship between himself and BOP counselors Leukefeld and Hoover, and the grievance he filed immediately before the investigation which lead to the disciplinary charge.[1]

---

[1] As a threshold matter, there is a substantial question whether a retaliation claim is cognizable in a habeas proceeding under Section 2241. *See Speight v. Minor*, 2007 WL 2421800 (3rd Cir. 2007) ("We question whether a retaliation claim is cognizable under § 2241."); *Smith v. Sniezek*, 2007 WL 642017, **3 (N.D. Ohio 2007) (claim that DHO sanction was imposed in retaliation for assertion of rights protected by constitution is not cognizable in habeas proceeding under Section 2241). The Court assumes without deciding that Antonelli's retaliation claim may be pursued in Section 2241 as a basis to challenge his DHO conviction.

Certain actions taken by correctional staff, even if appropriate and constitutionally sound when done with neutral motive, become impermissible if done to retaliate against a prisoner for that prisoner's exercise of constitutionally-protected rights.  In order to establish such a "retaliation" claim, the prisoner must demonstrate that:

1.   the prisoner's conduct which invoked the antagonistic response is constitutionally-protected;

2.   the defendant's retaliatory response was severe enough to deter a person "of ordinary firmness" from continuing to engage in the conduct; and

3.   the defendant's retaliatory response was taken (at least in part) because of the prisoner's constitutionally-protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (*en banc*).

With respect to the first requirement, the First Amendment protects an inmate's right to file grievances against prison officials on his own behalf.  *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).  But, the right is qualified.  An inmate does not, for instance, have a constitutionally-protected right to file frivolous grievances.  *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).  And the Sixth Circuit follows the majority view that this right is personal, and does not encompass a right to file grievances on behalf of other inmates, or assist them in doing so.  *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993) ("no constitutional right to assist exists."); *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir.1990); *Gassler v. Rayl*, 862 F.2d 706, 708 (8th Cir.1988) ("[A]n inmate simply does not have the right to provide his fellow inmates with legal assistance.")

To the extent Antonelli predicates his retaliation claim upon adverse actions taken by prison officials in response to his assistance to other inmates in filing grievances, his claim must fail as a

10

matter of law, as such conduct is not constitutionally protected.  *Gibbs*, 10 F.3d at 378.  The Court

further concludes that the February 27, 2006, grievance filed by Antonelli was frivolous, and

therefore, not constitutionally-protected conduct under *Lewis*.  This grievance, the filing of which

directly preceded the investigation and subsequent disciplinary charge challenged by Antonelli here,

constitutes the appropriate focus for his claim of unconstitutional retaliation.  In the February 27,

2006, grievance, Antonelli complained that Leukefeld and Hoover were "perpitrating [sic] a fraud"

because neither was licensed by the State of Arkansas to practice as psychologists, that they were

"breaking the laws of ARKANSAS,!", and asked that "they be investigated and that INTERNAL

AFFAIRS be contacted and they be relieved of their present employments." [R. 5-2 at pg. 1.]  He

filed this grievance despite his acknowledgment that:

> [f]irst of all, it is obvious that no federal employee is bound by the state registration
> obligations because the Federal Bureau of Prisons is not a state agency.  It is a federal
> one and the land that all Bureau of Prisons lies on is always federal land and not state
> land.  This is common knowledge amongst federal inmates.

[R. 34-2 at pg. 7.]  The foregoing demonstrates not only that Antonelli's allegations were legally

meritless, but that he was subjectively aware that his allegations were meritless at the time he made

them.  While a prisoner has every right to resolve legitimate disagreements with prison staff through

the prison's grievance process, his use of the same process as a weapon against staff members based

upon frivolous allegations is not constitutionally-protected conduct which can support a retaliation

claim.  *Lewis*, 518 U.S. at 353.

The Court further concludes that Antonelli has presented insufficient evidence that prison

officials charged him with the offense because of  filing grievances and lawsuits.  Without this

critical element of causation, a retaliation claim fails.  Antonelli has filed into the record prodigious

evidence of *his* animosity towards the staff at FCC-Forrest City. In an affidavit tendered in support

of his amended petition [R. 5-2], Antonelli sets forth a narrative explanation of dozens of grievances

he filed against staff members, which range from the unexceptional, relating to his desire for

dentures or new eyeglasses, to the esoteric, relating to staff refusal to permit him to put Ralph

Nader's telephone number on his call out list, provide him with adequate toilet paper, adequately

maintain the prison's washers and dryers, and Leukefeld's retaliation against him by telling the

RDAP class that Antonelli had 'farted.' Respondent has also filed a listing of the 713 inmate

grievances filed by Antonelli, a considerable portion of which appear to have been filed during his

stay at FCC-Forrest City.[2] [R. 24-6.]

> However, this evidence does not demonstrate a retaliatory intent. As one court put it,
>
> An inmate cannot immunize himself from adverse administrative action by prison
> officials merely by filing grievances and then claiming that everything that happens
> to him is retaliatory ... [i]f that were so, then every prisoner could obtain review of
> non-cognizable claims merely by filing a lawsuit or grievance and then perpetually
> claiming retaliation. A plaintiff cannot bootstrap a frivolous complaint with a
> conclusory allegation of retaliation.

*Reinholz v. Campbell*, 64 F.Supp.2d 721, 733-34 (W.D. Tenn. 1999) (*citing Smith v. Halford*, 570

F.Supp. 1187, 1194-95 (D.Kan. 1983)). Put another way, the mere fact that a prisoner has been on

the opposite side of prison officials in numerous adversarial contexts, whether disciplinary hearings,

prisoner grievances, or litigation, does not without more, demonstrate that any (or all) actions of

prison officials are taken in retaliation for the prisoner's opposing stance; it may simply demonstrate

---

[2] The Court has already noted Antonelli's repeated and extensive abuse of the judicial
system, which has resulted in several courts, including the United Supreme Court, imposing
restrictions upon his ability to file new proceedings without receiving prior permission. [R. 7 at pg.
9, *citing Antonelli v. Sanders et al.*, 06-117, Eastern District of Arkansas [R. 6 therein at n. 5, 6
(collecting cases)].]

the prison official's belief, whether correct or not, that the prisoner has violated prison rules, or vice

versa.  The Court cannot accept a prisoner's invitation to infer a retaliatory motive based solely on

bare assertions of retaliation or the mere proximity of events.  *Garrett v. Angelone*, 940 F.Supp. 933,

944 (W.D. Va. 1996), *aff'd*, 107 F.3d 865 (4th Cir. 1997).

Where prison officials provide a rational, neutrally-motivated explanation for their conduct,

a prisoner must do more than respond with speculation.  *Abrams v. Walker*, 307 F.3d 650, 653 (7th

Cir. 2000) (prisoner must demonstrate that prison official's actions would not have occurred "but

for" his grievance by providing "definite, competent evidence" and not "mere speculation" or

"unreasonable inferences").  During his investigation, SIA Baltazar obtained written statements to

support the charge from inmates and staff alike, providing ample ground for the Court to conclude

that prison officials "would have taken the same actions even in the absence of the protected

conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *see also Talbert v. Hinkle*, 961

F.Supp. 904 (E.D.Va. 1997) (rejecting retaliation claim by inmate who showed senator's letter to

other inmates where prison officials demonstrated that his segregation and transfer, while done in

direct response to his activity, was justified by legitimate penalogical concern that his conduct would

cause unrest within prison creating potentially serious security risk).  The presence of neutrally-

justifiable grounds for filing the disciplinary charge against Antonelli negates the viability of his

retaliation claim.

### 3.

Next, Antonelli alleges that his disciplinary conviction is invalid because DHO Jones was

not an impartial decision maker.  Antonelli contends that Jones was subject to the "command

influence" of BOP officer Marquez, a captain at FCC-Forrest City, rendering her partial.  Antonelli

does not explain what he means by a "command influence." The DHO advised Antonelli that she

was not employed by the institution, but by the South Central Regional Office of the BOP.

An inmate is entitled to have a charge against him determined by an impartial decisionmaker.

*Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974). A decisionmaker is considered impartial unless

he or she has "a direct personal or otherwise substantial involvement, such as major participation in

a judgmental or decisionmaking role, in the circumstances underlying the charge." *Meyers v.

Allredge*, 492 F.2d 296, 306 (3rd Cir. 1974); *Mitchell v. Maynard*, 80 F.3d 1433, 1446 (10th Cir.

1996) (due process challenges to decisionmaker's impartiality are limited to whether any bias

prevented inmate from receiving a meaningful opportunity to be heard and whether discipline was

imposed for an improper purpose). Antonelli contends that he saw Jones in Marquez's office on the

day he was called in to see Marquez regarding his investigation. As the DHO was not in any way

involved in the facts giving rise to the charge - Antonelli's circulation of the letter in question - there

is no basis to conclude that DHO Jones was not impartial. *Smith v. Bezy*, 2005 WL 1703131, **2

(7th Cir. 2005) (prisoner's allegation that charging officer remained in room with DHO after hearing

is not sufficient to state viable challenge to DHO's impartiality). Therefore, Antonelli's claim to the

contrary fails as a matter of law.

**4.**

Procedural due process concerns require that before a prisoner may be subjected to discipline

increasing the duration of his incarceration, he must be informed in writing of the charges against

him at least 24 hours before any hearing. During the hearing or as part of the adjudicative process,

he must be allowed to present evidence in his own defense, whether by live testimony or written

documentation. Once a decision is made, he must be provided a written explanation of the finding

and the evidence relied upon in reaching it.  The disciplinary decision must be supported by at least some evidence.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).  The BOP implements these requirements through administrative regulation. 28 C.F.R. § 541.17.

Antonelli contends that his due process rights were violated at the DHO hearing because the DHO refused his request to call character witnesses on his behalf.  Antonelli indicates that these witnesses would have testified that: (1) Antonelli was a responsible adult education tutor; (2) Lopez informed Leukefeld and Hoover of Antonelli's grievance shortly after it was filed; (3) Antonelli had informed prison staff of two separate "scams" by inmates; and (4) Antonelli had informed prison staff that an inmate was smoking marijuana in his cell.  [R. 34-2 at pg. 8]

The DHO's refusal to call Antonelli's witnesses was reasonable.  A DHO has the authority, consistent with a prisoner's due process rights, to refuse to call witnesses whose testimony he or she believes will be cumulative to other evidence or simply irrelevant to determining the inmate's guilt of the charge.  *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2nd Cir. 1999).  Here, all but one of the requested witnesses were asked to be called to testify purely as character witnesses to support Antonelli's contention that he did not intend to "encourage" a group demonstration.  However, as with all matters of subjective intent, the best evidence of a state of mind is found not in a party's self-serving characterization of their intentions, but in reasonable inferences to be drawn from objectively observable conduct.  While Antonelli was certainly free to testify regarding these past events in order to bolster his claim of innocence, the DHO acted within her discretion by refusing to call four separate witnesses to attest to Antonelli's character.  Further, Antonelli had already set forth the details of his three prior efforts to advise prison staff of misconduct by other prisoners in the affidavit

he submitted to DHO Jones at the initial March 13, 2006 hearing.  [R. 33-2 at 29-30.]  Live

testimony regarding the same subject matter could therefore reasonably be considered cumulative

of evidence Antonelli had already placed in the record by affidavit.  In light of the Supreme Court's

admonition that a reviewing court should not engage in a searching, *de novo* review of the record

regarding a disciplinary hearing officer's evidentiary rulings, *Hill*, 472 U.S. at 455, the Court cannot

conclude either that the exclusion was improper in light of the totality of the evidence or that

Antonelli suffered clearly demonstrable prejudice thereby.  *See Grossman v. Bruce*, 447 F.3d 801,

805 (10th Cir. 2006) (prisoner's failure to demonstrate prejudice by even erroneous exclusion of

witness testimony at disciplinary hearing passes muster under harmless error review).

Antonelli also challenges the DHO's refusal to permit him to view the five written statements

provided by prison staff, or to question the three inmate witnesses who testified at the hearing.

However, Antonelli specifically requested a staff representative to represent him during the DHO

hearing, and acknowledges that his chosen representative was permitted to view the statements.  As

a threshold matter, when an inmate chooses to have a staff member represent him at a disciplinary

hearing, that representation is in lieu of, rather than in addition to, the prisoner representing himself

at the hearing.  Having chosen to have a staff member represent him at the hearing, Antonelli could

not thereafter choose to play the role of advocate.  This rule is codified in the BOP's administrative

regulations.  28 C.F.R. § 542.17; Program Statement 5270.07 § 7, pgs. 2-4 (1987).

In addition, an inmate does not have a constitutional right to confront adverse witnesses at

a prison disciplinary proceeding.  *Silva v. Casey*, 992 F.2d 20, 22 (2nd Cir. 1993).  And Antonelli

offers no concrete, particularized explanation of how these denials prejudiced his defense.  *Alkhalidi*

*v. Davis*, 2004 WL 260279, **3 (7th Cir. 2004).  The written statements were reviewed during the

hearing by his chosen staff representative, and its substance merely reinforced that which Antonelli

already knew from the charges filed against him and the testimony of the inmate witnesses.  Nor does

Antonelli indicate what questions he, or more appropriately his staff representative, would have

asked the three inmate witnesses that would have discernibly impacted the outcome of the

proceedings.  In light of Antonelli's failure to offer anything more than conclusory assertions that

the DHO's actions prejudiced his ability to present a defense, and the absence of self-evident

prejudice, even were the Court to conclude that the DHO's actions were incorrect, any such error is

not of constitutional magnitude under these circumstances.  *Howard v. Bureau of Prisons*, 487 F.3d

808, 813 (10th Cir. 2007).

### III.

Accordingly, **IT IS ORDERED** that:

1.      Antonelli's "Motion for Extension of Time ..." [R. 26] is **GRANTED.**

2.      Antonelli's "Motion for an Order Finding Respondent in Contempt ..." [R. 27] is

**DENIED**.

3.      Antonelli's "Motion for Evidentiary Hearing" [R. 31] is **DENIED**.

4.      Antonelli's "Motion for Leave to Employ Discovery Devices" [R. 32] is **DENIED.**

5.      Antonelli's "Motion to Expand Record" [R. 33] is **GRANTED**.

6.      Antonelli's Petition for a Writ of Habeas Corpus [R. 2, 5] is **DENIED**.

7.      The Court will enter an appropriate Judgment.

This the 24th day of March, 2009.



Signed By:

*__Gregory F. Van Tatenhove__*

**United States District Judge**